[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15670

_____

D.C. Docket No. 9:08-cv-81244-KAM

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ADT SECURITY SERVICES, INC.,

Claimant - Appellee,

THOMAS ROSSI,

BAYHILL DEVELOPMENT, LLC,

Claimants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 13, 2013)

Before MARTIN, HILL and BARKSDALE,[*] Circuit Judges.

PER CURIAM:

The appeal in this civil forfeiture *in rem* action is from a judgment under Federal Rule of Civil Procedure 54(b) (where action presents more than one claim for relief, or when multiple parties are involved, court may direct entry of final judgment to one or more, but not all, claims or parties if court expressly determines no just reason for delay). Bayhill Development, LLC, and Thomas Rossi, who represents he is Bayhill's managing member, challenge: the 11 October 2011 order denying attorney's fees and costs associated with their moving successfully to set aside a default; and the 13 October 2011 Rule 54(b) judgment, which granted summary judgment to the Government based on Bayhill's lack of standing. The appeal from the fees-and-costs order is DISMISSED; the Rule 54(b) judgment is AFFIRMED.

## I.

On 24 October 2008, the Government filed a verified complaint for civil forfeiture *in rem* against: all funds in the account of Property Futures, Inc.; and all interests of Robert Gannon, Property Futures, Inc., and Gannon Family Company, LLC (Gannon), in four real-estate properties, located at: 2801 Gateway Drive, Pompano Beach, Florida; 32100 U.S. Highway 19 North, Palm Harbor, Florida;

---

[*] Honorable Rhesa H. Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by designation.

3040 Industry Drive, East Hempfield, Pennsylvania; and 111 Windsor Drive, Oak Brook, Illinois.  The complaint asserted the properties were forfeitable under 18 U.S.C. § 981(a)(1)(c) for representing "proceeds derived, directly or indirectly, from the illegal mail fraud, wire fraud, and racketeering activities of the defendants in the case of [*United States v. Artuso*, No. 08-60014-CR-DMM]".  Those defendants had been convicted "for conspiracy under the Racketeer Influenced Corrupt Organizations Act . . . , multiple mail and wire fraud counts, and money laundering conspiracy"; their convictions were affirmed on appeal after this forfeiture action was filed.  *United States v. Artuso*, Nos. 08-17263 & 09-16093, at *2 (11th Cir. 20 June 2012).

In short, those defendants, with the help of an officer of ADT Security Services, Inc. (ADT), defrauded ADT by causing it to sell the above-described properties at lower-than-market prices to four different manager-managed LLCs; the LLCs then leased those properties back to ADT at higher-than-market rental rates.  The following three sales are relevant to this action:  the Pompano Beach property was sold to Efficient Realty & Development, L.L.C., a Florida limited liability company (Efficient Realty FL); the Palm Harbor property was sold to Westmore Properties, LLC, a Florida limited liability company (Westmore); and the Pennsylvania property was sold to Efficient Realty & Development, LLC, a Pennsylvania limited liability company (Efficient Realty PA).  The above-

3

referenced account of Property Futures, Inc., contains proceeds from rents paid by ADT to the LLCs.

As noted, this action was filed in 2008 to forfeit the properties and rental proceeds generated by them. As a result of the criminal proceeding, the interests of the convicted defendants in the LLCs, properties, and bank account were forfeited to the Government in 2009. Gannon and others filed claims to the properties and proceeds; ADT filed its verified claim on 2 June 2009.

On 19 June 2009, the Government moved successfully for entry of default against Bayhill and Rossi (as noted, Rossi represents he is Bayhill's managing member) for failing to file required claims in this proceeding as possible claimants to the properties. The Government submitted an affidavit stating that Bayhill had a ten percent interest in three of the four properties for which forfeiture was sought (the two Florida properties and the Pennsylvania property).

On 28 June 2009, the Government moved to amend its verified complaint to describe more precisely the properties to be forfeited. Specifically, more than just the interests of Gannon were to be forfeited; the motion acknowledged more parties may have an interest in the properties. Accordingly, the amended complaint listed only the four properties, and also included "all lease payment monies being held in escrow by the United States Marshals Service" for those properties. (The Government moved to amend a second time, but only to clarify it

4

was not seeking to forfeit the interests of two named "innocent mortgageholders"; the motion was granted. This second amended complaint, filed 27 July 2009, is the operative complaint.)

Bayhill and Rossi moved on 11 July 2009 to set aside the default, asserting the original complaint only requested forfeiture of Gannon's interests. They also sought attorney's fees and costs associated with their motion. The Government did not oppose vacating the default.

Pursuant to 28 U.S.C. § 636(c) (upon consent of parties, full-time magistrate judge may conduct proceedings in civil matter and enter judgment when designated to exercise jurisdiction by district court) and Federal Rule of Civil Procedure 73 (same, pursuant to authorization under § 636(c)), the magistrate judge, by a 1 September 2009 order, granted Bayhill's and Rossi's motion, requiring the Government to pay their attorney's fees and costs incurred by moving to set aside the default. The order did not, however, state the amount to be paid. The Government moved unsuccessfully for reconsideration.

Upon Bayhill's notice of non-consent to magistrate-judge jurisdiction, however, this proceeding was returned to the district judge; it was then referred by that judge to the magistrate judge "for appropriate disposition or report and recommendation of all pre-trial matters". Thereafter, on 1 March 2010, Bayhill and Rossi moved for a specified amount of fees and costs. Because of the above-

described jurisdictional shuffling, the magistrate judge's report and recommendation (R&R) was not issued until 6 May 2010; it recommended Bayhill and Rossi receive $35,647.50 in fees and $109.76 in costs.

On 7 June 2010, the Government moved the district court to revisit the magistrate judge's 1 September 2009 order awarding Bayhill and Rossi attorney's fees and costs and the subsequent order denying the Government's motion to reconsider. Simultaneously, the Government filed its objections to the 6 May 2010 R&R recommending the amounts Bayhill and Rossi should receive.

Earlier, on 7 September 2009, Bayhill, "by and through its Managing Member, Thomas Rossi", filed a verified claim, asserting a ten percent interest in the two Florida properties and the Pennsylvania property, and a ten percent interest in the escrowed lease payments.  A footnote to the claim stated:

> Bayhill Development, LLC, has at times been referred to interchangeably as Bayhill Development, Inc., as a function of typographical errors.  This claim is made on behalf of both entities and the term 'Bayhill' is intended here to refer to both entities.  As the government is aware, Bayhill owns its ten percent interest in each of the properties, through its membership in [Westmore], [Efficient Realty FL], and [Efficient Realty PA] and so Mr. Rossi makes this claim on behalf of Bayhill and those other entities in which Bayhill is a member to ten percent (10%) of the value of the underlying defendant properties identified herein and to ten percent (10%) of all monies held in escrow with respect to such properties as identified herein.

6

The claim was verified and signed by Rossi "on behalf of Bayhill Development, LLC[,] and all other relevant entities herein identified".

On 6 April 2010, pursuant to Rule G(8)(c)(i)(B) of the Federal Rules of Civil Procedure "Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions" and Federal Rule of Civil Procedure 56, the Government moved to strike the claims of Bayhill and Gannon for lack of standing and/or for partial summary judgment; the Government requested an evidentiary hearing on that motion.  At a 17 May 2010 motion hearing before the magistrate judge, the Government presented documentary evidence without objection; on the other hand, Bayhill presented no evidence to show standing, relying only on argument and earlier pleadings.

On 11 June 2010, Bayhill and Gannon moved for leave to file an amended verified claim, seeking to clarify:  the claims made; by whom they were made; and the authority of the parties to file them in their respective capacities.  The Government and ADT opposed the motion.

The magistrate judge's 23 July 2010 R&R recommended:  granting in part the Government's motion for partial summary judgment; and denying as moot the portion of the motion to strike Bayhill's and Gannon's claims.  On 3 and 23 August 2010, the magistrate judge issued an omnibus order and amended omnibus order on outstanding motions, which included, *inter alia*, striking Bayhill's and

7

Gannon's motion for leave to file an amended verified claim "as moot without prejudice with leave to refile", with instruction that should the R&R on summary judgment be adopted by the district court as to Bayhill, the motion for leave to file an amended verified claim "must be denied as moot or otherwise denied as futile as Bayhill will be deemed without standing to file such motion".

On 30 August 2010, Gannon entered into a stipulation and settlement agreement, approved by the court on 20 September 2010, through which Gannon, *inter alia*, withdrew, with prejudice, all claims relating to the forfeiture action. Accordingly, because Gannon's 9.9 percent interest is no longer at issue, and because 80.1 percent of the interest in the three LLCs was forfeited to the Government as a result of the criminal proceeding, this forfeiture proceeding concerns only Bayhill's claimed ten percent interest in the three LLCs.

On 7 October 2010, the district judge heard oral argument on objections to the R&R on summary judgment. An order adopting that R&R was issued a year later, on 3 October 2011. *United States v. All Funds in the Account of Prop. Futures, Inc.*, 820 F. Supp. 2d 1305 (S.D. Fla. 2011).

On 11 October 2011, the district judge entered an order addressing: Bayhill's and Rossi's 1 March 2010 motion for an order awarding a specified amount of fees and costs, which the magistrate judge recommended granting in the 6 May 2010 R&R; and the Government's 7 June 2010 motion to revisit the

8

magistrate judge's 1 September 2009 order awarding Bayhill and Rossi attorney's fees and costs and the subsequent order denying the Government's motion to reconsider, which had been deferred to the district court in the magistrate judge's omnibus order and amended omnibus order. *United States v. All Funds in the Account of Prop. Futures, Inc.*, No. 08-81244-CIV, 2011 WL 7020934 (S.D. Fla. 11 Oct. 2011). Acknowledging the magistrate judge had operated under consent jurisdiction at the time of the 1 September 2009 order awarding fees and costs, the district court concluded that the amount of the award not being determined at that time rendered that order's award of fees and costs not final, citing *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of Detroit*, 50 F.3d 908, 921-22 (11th Cir. 1995) (where amount of fee award not yet determined, award not final). *All Funds in the Account of Prop. Futures, Inc.*, 2011 WL 7020934, at *1-2. With both motions properly before it, the district court: granted the Government's motion to revisit the magistrate judge's order awarding fees and costs; denied Bayhill's and Rossi's motion for an order awarding an amount of fees and costs; and did not adopt the R&R which had recommended awarding attorney's fees and costs associated with Bayhill's and Rossi's moving to set aside the entry of default, ruling they were not "prevailing parties" under the fee-shifting provisions of the Civil Asset Forfeiture Reform Act of 2002 (CAFRA), 28 U.S.C. § 2465. *Id.* at *2. No judgment has been entered, however, with respect to this order.

9

Two days later, on 13 October 2011, a Rule 54(b) judgment was entered, dismissing Bayhill's claim with prejudice, and dismissing Bayhill as a claimant. (The adopted R&R and the Rule 54(b) certification confirm the judgment entered for the Government on 13 October was a full and final resolution of all claims presented by Bayhill.) No judgment was entered, however, with respect to Rossi in his individual capacity. And, as noted, the fees-and-costs denial is not included in the Rule 54(b) judgment.

## II.

Bayhill and Rossi challenge the district court's: not awarding the fees and costs associated with their moving to set aside the default; and granting summary judgment in favor of the Government, based on lack of standing.

## A.

At the outset, it is necessary to decide what parties and claims are properly before us. It goes without saying that jurisdiction on appeal requires a final and appealable order for review, or some other jurisdictional basis. 28 U.S.C. §§ 1291 & 1292; *see also Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.*, 890 F.2d 371, 376 (11th Cir. 1989) (the Supreme Court has recognized three exceptions to the final judgment rule: "the collateral order doctrine, the doctrine of practical finality, and the exception for intermediate resolution of issues fundamental to the merits of the case"). As discussed below,

we have jurisdiction only over the Government and Bayhill, and only pertaining to the summary judgment.

**1.**

ADT is not a party to the challenged summary judgment provided for in the Rule 54(b) judgment and, therefore, is not a party to this appeal. Neither the Government's adopting ADT's briefing nor ADT's opposing Bayhill's and Rossi's motion to amend their verified claim is sufficient to render ADT a party to this appeal. As provided in the Rule 54(b) judgment dismissing Bayhill's claim, with prejudice, ADT's claim was severed and continued.

**2.**

The Rule 54(b) judgment dismissed Bayhill's claim, as well as Bayhill as a claimant/party. The judgment did not refer to Rossi, who did not file a claim in his individual capacity. Indeed, Bayhill's verified claim states: "Mr. Rossi makes this claim *on behalf of* Bayhill and those other entities in which Bayhill is a member". (Emphasis added.) There is no final judgment against Rossi; nor does he assert, much less demonstrate, any other jurisdictional basis on which to challenge the summary judgment. Therefore, he is not a party to this appeal.

**3.**

Regarding Bayhill's challenging the 11 October 2011 order denying fees and costs, and as noted above, that order is not a final judgment. And, that order does

11

not fall within one of the above-described exceptions to the final-judgment rule. Therefore, we lack jurisdiction to review it.

**B.**

Bayhill challenges the summary judgment for the Government, which held Bayhill lacks standing to file a verified claim. A summary judgment is reviewed *de novo*, applying the same standard as did the district court. *E.g.*, *Bozeman v. Orum*, 422 F.3d 1265, 1267 (11th Cir. 2005). In so doing, the non-movant's version of the facts is accepted as true, and all justifiable inferences are drawn in the non-movant's favor. *Id.* Summary judgment is proper if the evidence shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a).

The Government's challenge to Bayhill's standing rests in part on the Government's asserting Bayhill Development, LLC, does not exist as a jural entity. The Government is correct in maintaining Bayhill is not a properly formed limited liability company (LLC). An LLC's being a "relatively new, hybrid form of business entity", CARTER G. BISHOP & DANIEL S. KLEINBERGER, LIMITED LIABILITY COMPANIES: TAX AND BUSINESS LAW ¶ 1.01 (2012), an understanding of an LLC is critical to resolution of the Government's claiming lack of standing.

> The limited liability company (LLC) is a relatively new,
> hybrid form of business entity that combines the liability
> shield of a corporation with the federal tax classification
> of a partnership. A creature of state law, each LLC is

12

> organized under an LLC statute that creates the company, gives it a legal existence separate from its owners (called "members"), shields those members from partner-like vicarious liability, governs the company's operations, and controls how and when the company comes to an end.  The essence of an LLC is the co-existence of partnership tax status with corporate-like limited liability.

*Id.* (footnotes omitted).

Florida LLCs have broad powers to conduct their business and may be formed for any lawful purpose.  FLA. STAT. §§ 608.403, .404(1)-(17).  A Florida LLC is properly formed by, *inter alia*, filing its name and articles of incorporation with the Florida Department of State.  *Id.* §§ 608.405, .407.  Any "person", whether natural or legal, may be a member of an LLC.  *Id.* §§ 608.405, .402(25).  An LLC is managed by its members, unless the articles of incorporation expressly provides a manager will manage the LLC.  *Id.* § 608.422.  In a *member-managed* LLC, each member is the LLC's agent; ordinarily, an act of a member for apparently carrying on, in the ordinary course, the LLC's business binds the LLC.  *Id.* § 608.4235(1)(a). In a *manager-managed* LLC, members are not the LLC's agent solely by virtue of being a member; ordinarily, an act of a manager for carrying on, in the ordinary course, the LLC's business binds the LLC.  *Id.* § 608.4235(2)(a).  "A manager must be designated, appointed, elected, removed, or replaced by a vote, approval or consent of a majority-in-interest of the members".  *Id.* § 608.422(4)(c)(1).

A Pennsylvania LLC may carry on any lawful business, and, unless otherwise stated in its articles of incorporation, may engage in all lawful activities for which LLCs may be organized. 15 PA. CONS. STAT. ANN. §§ 8921(a), 8911(a). An LLC is properly formed when a person, including a non-member, files articles of incorporation with the Pennsylvania Secretary of State. *Id.* §§ 8912, 8914. Pennsylvania LLCs are member-managed, unless the articles of incorporation specify manager-management. *Id.* § 8941. In a member-managed LLC, members are the LLC's agents for the purpose of its business; likewise, in a manager-managed LLC, managers are the LLC's agents for the purpose of its business. *Id.* § 8943(a)-(b). Pennsylvania allows selection and qualification of managers to be prescribed in the LLC's operating agreement. *Id.* § 8941(c). Unless a unanimous vote is required as provided in the operating agreement, "the affirmative vote or consent of a majority of the members or managers . . . entitled to vote on a matter shall be required to decide any matter to be acted upon by the members or managers". *Id.* § 8942(a).

*Bayhill Development, Inc.*, was registered in Delaware in 2001. But, in the operating agreements for Westmore, Efficient Realty FL, and Efficient Realty PA, *Bayhill Development, LLC*, is the entity identified as a member of those LLCs; and, it is listed in those operating agreements as owning a ten percent interest in

14

the three properties owned by those three LLCs. That ownership interest is claimed as a result of Bayhill's membership in those three LLCs.

In 2006, Rossi reinstated Bayhill Development, Inc., after it had become inactive, then filed articles of organization in Delaware for a new (another) LLC: *Bayhill Development Group, LLC*. Rather than bring this information to the court's attention, Bayhill's verified claim included the above-discussed footnote, which explained the difference in Bayhill's name as a mere typographical error; Rossi then verified and signed the claim "on behalf of Bayhill Development, LLC, and all other relevant entities herein identified".

At the 17 May 2010 hearing, however, on the Government's summary-judgment motion, the Government submitted, without objection, documents supporting the non-existence of a certificate of incorporation, certificate of limited partnership, or articles of organization filed for the first Bayhill LLC, *Bayhill Development, LLC*, in New York, where Bayhill claimed it was organized. Bayhill's counsel admitted as much at that hearing, stating: "Bayhill Development, LLC[,] was not properly formed as an LLC".

Bayhill contends it exists, however, in the form of either a *de facto* LLC or an LLC by *estoppel*. The adopted R&R stated it did not need to consider this issue in order to reach its recommendation that Bayhill lacked standing to file a verified claim. The R&R stated in a footnote, *inter alia*:

15

> [B]ecause the undersigned finds that neither [Bayhill nor Gannon] has standing, as a substantive matter, to file a claim on behalf of themselves to property belonging to the LLCs, it's unnecessary to address the Government's argument that Bayhill, LLC, since it wasn't properly formed, is not a proper party claimant, or Bayhill's counter-argument that Bayhill[,] LLC[,] exists by virtue of estoppel or *de facto*. Nonetheless, the [c]ourt feels constrained to point out that while the undersigned previously accepted as true Rossi's explanation for failing to form the proper legal entities for purposes of the Supplemental Rule [G(5)] analysis, there is substantial evidence in this record that Rossi's attestation in his supporting statement under oath . . . in support of the claim is lacking in credibility. The Government evidence adduced at the hearing on the instant motion would in all likelihood compel this court to make such finding if one were required.

*All Funds in the Account of Prop. Futures, Inc.*, 820 F. Supp. 2d at 1322 n.22.

Accordingly, Bayhill mentions its alternative LLC contention only in a footnote in its opening brief; after the Government thoroughly briefed this issue in its response brief, Bayhill, again, provided only a footnote in its reply brief, stating, *inter alia*:

> Whether or not Bayhill was properly formed as an LLC, as the record below shows without dispute, Bayhill paid taxes each year . . . , and otherwise meets all criteria for a *de facto* LLC or an LLC by *estoppel* and the Government has no standing to challenge the same in any event . . . . It is not material to the appeal based on the manner in which the lower court addressed it.

This contention's cursory mention in two footnotes is insufficient for our consideration of whether Bayhill is a *de facto* LLC or one by *estoppel*;

16

accordingly, the contention is abandoned. *See, e.g.*, Fed. R. App. P. 28(a)(9); *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1297 n.3 (11th Cir. 2009) (cursory briefing of argument deemed waived); *Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (acknowledging issue in briefing without argument deemed abandoned); *Cont'l Technical Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) ("An argument not made is waived".).

In the light of Bayhill's not being a properly formed LLC, our evaluating the district court's granting summary judgment to the Government against Bayhill requires our considering whether Bayhill, despite its not being an LLC, is an entity that can make an appearance. If we conclude it can do so, we must then decide whether it has standing to file a verified claim, either on its behalf or on behalf of Westmore, Efficient Realty FL, and Efficient Realty PA. Finally, if we decide Bayhill has standing, we must still decide whether its claim was filed properly. For the reasons presented *infra*, because we hold Bayhill can make an appearance but lacks standing, we do not reach proper filing *vel non*.

**1.**

Standing, of course, is a threshold issue, subject to *de novo* review. *E.g.*, *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). A forfeiture claimant must satisfy both constitutional and statutory standing requirements to file a verified claim properly. *E.g.*, *United*

17

*States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987).

Claimant is required first to demonstrate an interest in the property sufficient for Article III standing; "otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts". *Id.* (citation omitted). If claimant shows that interest, the well-known three-factor test for standing requires: (1) claimant's having suffered an "'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the complained-of conduct; and (3) redressibility of the injury by a favorable decision. *United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Ownership is not required for Article III standing; a possessory interest will suffice. *E.g.*, *$38,000.00*, 816 F.2d at 1544. Such interests are evaluated under state law; thereafter, federal law determines whether those interests may be forfeited. *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007).

The purpose of claimant's being required also to establish statutory standing is, *inter alia*, to "minimize the danger of false claims by requiring claims to be verified or solemnly affirmed". *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 150 n.9 (3d Cir. 2003). Governing this action are 18 U.S.C. § 983,

18

which identifies the general rules for civil forfeiture proceedings, and the corresponding Federal Rule of Civil Procedure "Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions".  *See* Fed. R. Civ. P. Supp. R. A(1)(B) (Supp. R.) (supplemental rules govern "forfeiture actions *in rem* arising from a federal statute").

Any person or entity asserting a claim in a civil forfeiture *in rem* proceeding "may contest the forfeiture by filing a claim in the court where the action is pending".  Supp. R. G(5)(a)(i).  To satisfy statutory standing, the claim must, *inter alia*, "identify the specific property claimed"; "identify the claimant and state the claimant's interest in the property"; and "be signed by the claimant under penalty of perjury".  Supp. R. G(5)(a)(i)(A)-(C).  *See also* 18 U.S.C. § 983(a)(2)(c) (claim must:  identify specific property claimed; state claimant's interest in that property; and "be made under oath, subject to penalty of perjury").  Although strict adherence to the filing requirements is necessary to perfect statutory standing, *United States v. Real Prop.*, 135 F.3d 1312, 1316 (9th Cir. 1998) (collecting cases where courts condition standing to contest forfeiture or garnishment actions on strict  compliance with filing requirements), "technical noncompliance with the procedural rules governing the filing of claims may be excused", *United States v. Premises & Real Prop. at 4492 Livonia Rd., Livonia, N.Y.*, 889 F.2d 1258, 1262 (2d Cir. 1989).  Our research has not revealed any decisions striking a claim, under

19

analogous circumstances, for failure to satisfy Supplemental Rule G's statutory-standing requirements.

Rossi's signing the verified claim on behalf of Bayhill Development, LLC, constitutes, at most, excusable technical noncompliance. Rossi signed the verified claim on behalf of Bayhill Development, LLC, and he "solemnly affirmed" its validity under penalty of perjury. *See, e.g.*, Supp. R. G, advisory comm. notes sub. 5 ("An artificial body that can act only through an agent may authorize an agent to sign for it."). Therefore, Bayhill Development, LLC, by and through Rossi, is "properly before the court" within the technical meaning of Supplemental Rule G(5); on the other hand, of course, whether a non-existent legal entity can ultimately assert a valid claim is, as the magistrate judge recommended and the district court held, a question of "substantive standing jurisprudence" in determining whether the requisite Article III case or controversy exists. Our technical-noncompliance ruling also comports with the need to consider Rule G(8) with the leniency accorded parties under the liberal amendment provisions of Federal Rule of Civil Procedure 15. *See* Supp. R. G, advisory comm. notes sub. 8 ("As with other pleadings, the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15.").

**2.**

As discussed, although Bayhill may have complied with the technical requirements of the supplemental rules, it must have substantive standing to contest the civil forfeiture *in rem*. Bayhill's verified claim states it is filed "on behalf of Bayhill and those other entities in which Bayhill is a member to ten percent (10%) of the value of the underlying defendant properties". Accordingly, it must be determined: (a) whether Bayhill has standing to assert a claim on its own behalf; and (b) whether it has standing to assert a claim on behalf of Westmore, Efficient Realty FL, and Efficient Realty PA.

**a.**

As stated above, to have standing, Bayhill must first have an ownership interest (a possessory interest will suffice) in the defendant properties. Such interest is evaluated by the law of the jurisdiction creating the asserted interest, *i.e.* state law, *see United States v. Ramunno*, 599 F.3d 1269, 1272 (11th Cir. 2010), which, here, is that of Florida and Pennsylvania. Under both Florida and Pennsylvania law, property acquired by an LLC is property of that LLC. FLA. STAT. § 608.425 (property contributed to the LLC, acquired by the LLC through purchase, or acquired with LLC funds is property of the LLC); 15 PA. CONS. STAT. ANN. § 8923 ("A member has no interest in specific property of a[n] [LLC].") Because Bayhill's claimed interest in the properties arises only out of its membership in the LLCs owning those properties, Bayhill cannot assert a claim on

21

its own behalf.  Accordingly, the district court properly granted summary judgment in this regard.

**b.**

Bayhill's not having standing to assert a claim on its own behalf does not alone prevent its asserting a claim on behalf of Westmore, Efficient Realty FL, and Efficient Realty PA.  Again, Florida and Pennsylvania law inform this determination.

The three LLCs provided in their respective operating agreements that each LLC would be manager-managed (as opposed to member-managed), as allowed under Florida and Pennsylvania law.  FLA. STAT. § 608.422 (if provided in operating agreement, management of LLC shall be vested in manager or managers and LLC shall be a manager-managed company); 15 PA. CONS. STAT. ANN. § 8941(b) (management of company shall be vested, as provided in certificate of organization, in one or more managers).

Under both States' laws, a member of a manager-managed LLC does not have the authority to act on behalf of the LLC solely by reason of being a member, FLA. STAT. § 608.4235, 15 PA. CONS. STAT. ANN. § 8943; nor is a member the proper party to proceedings by or against that LLC, FLA. STAT. § 608.462, 15 PA. CONS. STAT. ANN. § 8991(b).  In Pennsylvania, however, a member may file an

22

action on behalf of the LLC, if authorized by vote of the members.  15 PA. CONS. STAT. ANN. § 8992(1).

Bayhill asserts the adopted R&R "confused the concept of 'authority' with 'standing'" because Bayhill was acting as the LLCs' agent; in that vein, Bayhill maintains it had the "authority" to file on behalf of the LLCs and its standing is irrelevant.  The above statutes clearly refute this assertion.

Bayhill also contends it and Gannon became managers of the LLCs—and, thus, the proper parties to file verified claims on behalf of those LLCs—after the criminal forfeiture left only Bayhill and Gannon as the remaining members of the LLCs; it asserts they became managers after Bayhill and Gannon voted each other as managers, as provided for in the respective LLCs' operating agreements.  As the adopted R&R concluded, however, this contention is without merit.  Bayhill is correct that the operating agreements allow Bayhill and Gannon, as members, to remove and replace managers by vote.  Operating Agreements at § 4.1 (powers of LLC exercised by authority of one manager, "as may be determined by the unanimous consent of all of the Members from time to time").  Statutory law allows the same.  *See* FLA. STAT. § 608.422(4)(c)(1) (manager must be, *inter alia*, replaced by vote, approval, or consent of majority-in-interest of members), 15 PA. CONS. STAT. ANN. § 8942(a) (affirmative vote or consent of majority of members entitled to vote on matter required to decide any matter to be acted upon by

23

members or managers). Any substantive merit to this contention fails, however, as an evidentiary matter. We agree with the adopted R&R's analysis and conclusion:

> The argument itself relies on the declaration of Bayhill's attorney in this action . . . , in which [he], as the witness, attempts to show through hearsay that the Claimants "as the only remaining members," of the [LLCs], voted and agreed to serve as the LLCs' agents to file the claims at issue. . . . No date is provided as to when this action allegedly took place, nor is any supporting documentation offered into evidence to prove the existence of the alleged resolutions voted upon. More importantly, the "declarant" stating that the vote took place and describing the actions taken is not alleged to have been present at the vote and, therefore, cannot speak from personal knowledge, but only from what Claimants told him. This, of course, is the purest form of inadmissible hearsay.

*All Funds in the Account of Prop. Futures, Inc.*, 820 F. Supp. 2d at 1331-32.

As the adopted R&R states correctly: "As an *in rem* proceeding, a civil forfeiture action is unlike most other civil actions in that the defendant is the property subject to forfeiture and, as such, it is the *claimant*, not the plaintiff, who has the burden to demonstrate standing by a preponderance of the evidence". *Id.* at 1325 (emphasis added) (citing *$38,000.00*, 816 F.2d at 1543 n.11; Supp. R. G(8)(c)(i)(B) (at any time before trial, Government may move to strike claim because claimant lacks standing). Bayhill has failed to satisfy its burden of demonstrating it had authority to file a claim on behalf of Westmore, Efficient Realty FL, and Efficient Realty PA.

24

A final point on standing *vel non* compels addressing the following Pennsylvania statute: "The lack of authority of a member or manager to sue on behalf of a limited liability company may not be asserted as a defense to an action by the company or by the company as a basis for bringing a subsequent suit on the same cause of action". 15 PA. CONS. STAT. ANN. § 8993. At first glance, this appears to bar the Government's challenging Bayhill's filing a claim on behalf of Efficient Realty PA. The statute, however, is inapplicable.

At the outset, the Pennsylvania statute contemplates when a member or manager files an *action*, as opposed to when such member or manager files a *claim* in a civil forfeiture *in rem* action. As we are unaware of the statute's being applied in this manner, we will not extend its reach in this circumstance.

The committee comments to this Pennsylvania statute provide further support for this conclusion, identifying the purpose of the statute as preventing a company "from relitigating claims that were brought or settled without authority". 15 PA. CONS. STAT. ANN. § 8993 comm. cmt. In the committee's view, the purpose of questioning a member or manager's authority to file an action is to protect passive members; accordingly, "as long as errant litigants are liable for damages", this defense is unnecessary. *Id.* This is not the purpose of questioning authority in the instance of a civil forfeiture *in rem* proceeding.

25

Indeed, pursuant to Supplemental Rule G(8)(c), the Government is provided direct authority to question Bayhill's standing; the Rule provides, in relevant part: "At any time before trial, the [G]overnment may move to strike a claim or answer . . . because the claimant lacks standing". Supp. R. G(8)(c)(i)(B). The authority to file a claim is part of the statutory-standing equation. Occurring here, the Government's motion to strike was presented "as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence". Supp. R. G(8)(c)(ii)(B).

Because the Supplemental Rules explicitly allow the Government to question Bayhill's standing to file a verified claim on behalf of Efficient Realty PA, we conclude the Pennsylvania statute is not applicable in this context. Accordingly, the district court properly concluded Bayhill lacks standing for all three LLCs.

## 3.

As stated *supra*, because Bayhill lacks standing to assert a claim on behalf of itself or of Westmore, Efficient Realty FL, and Efficient Realty PA, we do not reach whether Bayhill properly filed a claim.

## III.

For the foregoing reasons, the appeal from the 11 October 2011 order denying attorney's fees and costs is DISMISSED; the 13 October 2011 Rule 54(b) judgment is AFFIRMED.